UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAY A. EWALT (SCHWEITZER), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of Social Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. C07- 172 TSZ-JPD <br><br> REPORT AND RECOMMENDATION |

Plaintiff Fay A. Ewalt[1] appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.*, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-six year old woman with a high school education, who has also received vocational training to obtain secretarial certification and medical assistant certification. Administrative Record ("AR") at 17. Her past work experience includes

---

[1] The plaintiff initially filed the proceeding as Fay A. Ewalt. It appears that Ewalt is the plaintiff's married name, but the briefing from her has all been in the name of Fay A. Schweitzer. The opinion will refer to the plaintiff as Ms. Ewalt.

REPORT AND RECOMMENDATION
PAGE -1

employment as a medical assistant, a self-employed house cleaner, a bank teller and a home health care worker. *Id*.

On July 31, 2002, plaintiff filed a claim for SSI payments. On October 31, 2002, she filed an application for DIB alleging an onset date of July 26, 2001. AR at 16. Both claims were denied initially and on reconsideration. A hearing then took place before an Administrative Law Judge ("ALJ") on September 29, 2005. AR at 436-65. On May 18, 2006, the ALJ issued a decision denying disability. AR at 16-29.

Plaintiff requested administrative review of the ALJ's decision, which the Appeals Council denied. AR at 6-8. Consequently, the ALJ's May 18, 2006, decision serves as the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence

01 is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

02 must be upheld. *Id.*

03 The Court may direct an award of benefits where "the record has been fully developed

04 and further administrative proceedings would serve no useful purpose." *McCartey v.*

05 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). The Court

06 may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

10 *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

11 erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

13 As the claimant, Ms. Ewalt bears the burden of proving that she is disabled within the

14 meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

15 Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

16 any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

17 expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

18 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

19 are of such severity that she is unable to do her previous work, and cannot, considering her

20 age, education, and work experience, engage in any other substantial gainful activity existing

21 in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v.*

22 *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

23 The Commissioner has established a five step sequential evaluation process for

24 determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

25 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

26 step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at

REPORT AND RECOMMENDATION
PAGE -3

any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant   physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE -4

## V.  DECISION BELOW

On May 18, 2006, the ALJ issued a decision finding:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's back impairment with chronic pain, chronic fatigue syndrome, and migraine headaches are considered "severe" based on the requirements in 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not singly or in combination meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of this decision.

6. The claimant retains the residual functional capacity to occasionally lift and/or carry 20 pounds, frequently lift frequently lift and/or carry 10 pounds, sit about 4 hours in an 8-hour workday, and stand and/or walk (being on her feet) about 4 hours in an 8-hour workday.  She needs to alternate sitting, standing, and ambulating to relieve pain or discomfort.  She can frequently to occasionally perform flex trunk postures and positions and occasionally perform ascending and descending with no climbing of ladders.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is "a younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. Due to the claimant's age, transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using vocational expert testimony and Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  An [e]xample of such jobs is work as a document preparer (DOT# 249.587-018;

        sedentary; unskilled SVP 2) of which there are 90,000 jobs in the United States and 3,000 jobs in the State of Washington.

13.     The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

AR at 28-29.

## VI.  ISSUES ON APPEAL

In a brief in excess of authorized page limits,[3] the plaintiff identifies the issues on appeal as:

1. Did the ALJ Fail to Find All of Plaintiff's Severe Impairments?
2. Did the ALJ Fail to Consider Plaintiff's Non-Exertional Severe Impairments?
3. Did the ALJ Err Regarding the Vocational Expert?
4. Did the ALJ Err in His Adverse Credibility Assessment of the Plaintiff?
5. Did the ALJ Improperly Ignore Opinions of Four of Plaintiff's Doctors?
6. Did the ALJ Improperly Ignore the Opinions of a Counselor and Mental Health Clinician?

Dkt. No. 11, pp. 12-25.

## VII.  DISCUSSION

A.     <u>The ALJ Failed to Include All of Plaintiff's Severe Impairments.</u>

At step two of the sequential evaluation process, the ALJ is to identify all of the plaintiff's severe impairments. Step two is a "de minimis screening device to dispose of groundless claims." *Smolen v. Charter*, 80 F.3d 1273, 1290 (9th Cir. 1996). In his decision, the ALJ found the plaintiff suffered from three severe impairments: back impairment with chronic pain; chronic fatigue syndrome; and migraine headaches. AR at 28. The plaintiff asserts that the ALJ erred, because he failed to include fibromyalgia and depression among the

---

[3] The Court directs plaintiff's counsel to LR 7(e)(3) for page limitations on opening and reply briefs, and trusts that the rule violations will not be repeated in future briefs.

REPORT AND RECOMMENDATION
PAGE -6

plaintiff's severe impairments. Dkt. No. 11 at 13-16.

                1.        Fibromyalgia

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). The disease is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports and other symptoms." *Benecke*, 379 F.3d at 590.

In this case, several doctors made fibromyalgia findings regarding the plaintiff. AR at 323, 329, 335, and 341. Although the ALJ found that both Craig Sawchuk, M.D. and Ellen Anne Schur, M.D. diagnosed the plaintiff with fibromylgia in his opinion (AR at 21), he made no other reference to the disease in his decision. The Commissioner argues that the failure to include fibromyalgia as a severe impairment is appropriate because plaintiff failed to establish that she suffered pain in 11 out of 18 "tender points," failed to point to a diagnosis that identifies medically acceptable clinical and laboratory diagnostic techniques, and because the ALJ found chronic fatigue syndrome to be severe, which would otherwise cover the complaints of pain made by the plaintiff. Dkt. No. 11, pp 5-6.

John Yuen, M.D., a rheumatologist, opined that the plaintiff's symptoms "may represent either fibromyalgia or chronic fatigue syndrome. . . . [S]he does not have all of the tender points typically seen in fibromyalgia, although she has severe fatigue and sleep disturbances seen in this condition." AR at 298. He was supportive of her referral to the Chronic Fatigue Syndrome Clinic at Harborview Hospital. *Id.* At that hospital, Sam Eggertsen, M.D., began to see and treat her for followup "of her chronic fatigue and fibromyalgia." AR at 305, 309. No physician ever ruled out the fibromyalgia diagnosis.

The Commissioner argues that the pain complained of by the plaintiff is not consistent with the objective medical findings. The problem with looking for objective findings and observations (e.g., 11 out of 18 tender points) is that fibromyalgia is a disease that is notable

REPORT AND RECOMMENDATION
PAGE -7

for its lack of objective diagnostic techniques. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, *its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.*") (emphasis added). "Joint swelling is not a symptom of fibromyalgia and, therefore, its absence is no indication that the plaintiff's condition is not disabling." *Foley v. Barnhart*, 432 F. Supp. 2d 465, 476 (M.D. Pa. 2005); *see also Moore v. Barnhart*, 114 Fed. Appx. 983, 992 (10th Cir. 2004) (similar). Put differently, "the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (internal quotation omitted).

This does not mean that every claimant asserting fibromyalgia receives a pass to a disability finding. It does mean, however, that at the step two inquiry stage, the ALJ erred in not finding this plaintiff's fibromyalgia to be severe, in light of the diagnoses by Drs. Yuen and Eggertsen. Again, the inquiry at step two is a screening test using a de minimis standard. In this case, the ALJ erred by failing to include fibromyalgia among plaintiff's severe impairments.

The Commissioner argues alternatively that the fibromyalgia diagnosis is covered by the finding that the plaintiff has severe chronic fatigue syndrome. It may be that the two diseases overlap, and the plaintiff's RFC taking into account fibromyalgia is the same as it would be taking into account chronic fatigue syndrome. However, if this is true, it is not established in the record, the ALJ did not make such a determination, and the Court lacks the background to draw the conclusion urged. This matter must be remanded for further proceedings to take the plaintiff's fibromyalgia into account.

        2.        Depression.

The plaintiff asserted a lifetime history of panic disorder, post-traumatic stress disorder, major depressive disorder, and bipolar disorder. AR at 22. The ALJ found that the medical

evidence did not support an allegation of severe mental impairments. *Id.* Plaintiff claims that the ALJ erred when he failed to identify depression as a severe impairment. Dkt. No. 11 at 15-16. She asserts the fact that she has been prescribed anti-depressant medications, and that it would have been medical malpractice for her physicians to have done so if the impairment was not "severe." *Id.*

Unlike the issue of fibromyalgia, the ALJ discussed his reasons for finding that the plaintiff did not suffer from a severe mental impairment, including depression. He found that she did have mild depressive symptoms, but that the treatment she was receiving was effective in addressing her symptoms. *Id.* She acknowledged that her stressors were related to life stressors, and not medical evidence. She had never undergone any psychiatric evaluations, and failed to cooperate with efforts to evaluate her mental status. *Id.* The plaintiff has the burden of establishing that depression is a severe impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). Just as this Court is unable to make a finding that chronic fatigue syndrome is equivalent to fibromyalgia, this Court is also unable to make a finding that prescribing of certain anti-depressants would constitute medical malpractice unless the recipient was severely impaired. There is simply nothing in the record that permits the Court to conclude that the ALJ's interpretation of the medical evidence is not a rational interpretation. Under these circumstances, the Court is not at liberty to substitute its judgment for that of the Commissioner; instead, the Commissioner's interpretation must be upheld. *Thomas* at 954. The ALJ did not err in his determination that depression was not a severe impairment.

B. <u>The ALJ Properly Considered Plaintiff's Non-Exertional Limitations Associated with the Severe Impairments Found by the ALJ, But Must Reconsider the RFC In Light of Plaintiff's Fibromyalgia.</u>

Plaintiff next assigns error to the RFC, claiming that the ALJ did not take into account all of the non-exertional limitations associated with chronic fatigue syndrome and migraine headaches, the severe impairments found in the record. The RFC is a determination of the most that a plaintiff can do, considering all of her impairments and limitations. SSR 96-8p, *available*

*at* 1996 WL 374184. This includes both exertional and non-exertional limitations.

In this case, the ALJ found that the plaintiff had an RFC to "occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, sit about four hours in an eight-hour workday, and stand and/or walk about four hours in an eight-hour workday. She also needed to be able to alternate between sitting, standing and ambulating to relieve pain or discomfort. She can frequently to occasionally perform flex trunk postures and positions and occasionally perform ascending and descending with no climbing of ladders." AR at 28. Plaintiff asserts that this RFC determination failed to include muscle pain associated with chronic fatigue syndrome and pain associated with migraine headaches. Dkt. No. 11 at 18, 19.

The ALJ discredited plaintiff's testimony regarding the extent of limitations. As discussed below, with the fibromyalgia exception, this Court cannot conclude that the ALJ's adverse credibility finding is unsupported by the record. Accordingly, this Court cannot conclude that the ALJ erred in assessing the extent of plaintiff's non-exertional limitations with respect to the severe impairments found..

However, this Court had held that the ALJ erred by not including fibromyalgia as a severe impairment. Because the RFC is the maximum amount of work a claimant can perform taking into account all of the severe and non-severe impairments, this requires that on remand, the ALJ reconsider the plaintiff's RFC, taking her fibromyalgia into account.

   C. <u>The ALJ Did Not Err Regarding the Vocational Expert.</u>

In this assignment of error, the plaintiff first claims that the ALJ erred by using the Social Security Administrations Medical-Vocational guidelines ("Grids"), and states that the ALJ should have called an expert. Dkt. No. 11 at 19. In the next sentence, the plaintiff acknowledges that the ALJ called a Vocational Expert ("VE"). Notwithstanding this inconsistent position, or perhaps because of it, the plaintiff wisely drops the argument in her reply brief.

Despite the shotgun manner in which the argument is raised and then dropped, it

REPORT AND RECOMMENDATION
PAGE -10

appears that the plaintiff is claiming that the ALJ did not follow the VE's opinions when the VE answered a hypothetical posed by her attorney that there would be no jobs for a person such as the plaintiff if she had to miss up to three to four days a week from a job. AR at 463. An ALJ is required to pose a hypothetical that identifies the limitations of the plaintiff, and as long as that hypothetical is based on medical assumptions supported by substantial evidence in the record, the ALJ has complied with his obligations. The ALJ is free to reject assumptions in the question that are not supported by substantial evidence. *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

In this case, the ALJ had no obligation to pose a hypothetical that assumed the plaintiff would be absent for three or four days per week. However, this case is being remanded for further consideration of the impact of the plaintiff's fibromyalgia. If, on remand, the plaintiff's RFC materially changes, then a hypothetical containing the plaintiff's revised RFC should be posed to a new VE.

     D.    <u>The ALJ Should Reconsider Credibility Issues on Remand In Light of Fibromyalgia.</u>

The ALJ found that the plaintiff was not entirely credible in her statements regarding her impairments and their impact on her ability to work. AR at 28. On appeal, the plaintiff objects and asserts that this finding is not supported by substantial evidence. Dkt. No. 11 at 20-23.

A determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996).[4] First, the ALJ must determine whether there

---

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are binding on SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION
PAGE -11

is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

In support of his determination that the plaintiff's testimony about her limitations was not entirely credible, the ALJ noted that the plaintiff's subjective complaints were inconsistent with her activities of daily living. AR at 23. Specifically, the ALJ pointed out that the plaintiff was able to provide for her own self-care, was caring for her son, that she was able to cook, clean, grocery shop, read, watch television, work on the computer three to five times a week, talk to people on the phone, drive a car and go out alone. In August 2004, she was swimming and in September 2004, she was walking thirty to sixty minutes as day and sitting comfortably. AR at 23, 136-46, 372. The ALJ is permitted to draw an adverse inference as to the plaintiff's credibility when the claimant is able to engage in daily activities inconsistent with an alleged

REPORT AND RECOMMENDATION
PAGE -12

impairment. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In addition, the ALJ noted significant gaps in the plaintiff's medical treatment. AR at 23. The ALJ noted that there was no treatment sought between February 2003 and April 2004.[5] *Id*. The treatment received was routine or conservative in nature. In January 2003, she denied all medical problems except for chronic back pain. AR at 216. Minimal or infrequent medical treatment can be appropriately used by an ALJ to discredit a claimant's testimony. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). This type of assessment is properly left to the judgment of the ALJ, and there is substantial evidence to support his determination.

However, the ALJ also concluded that the claimant's testimony was inconsistent with the medical evidence presented, and that this provided a clear and convincing reason to reject the claimant's subjective testimony. It is unclear from the ALJ's opinion as to which factor, if any, was weighted more heavily in his adverse credibility determination. It is at this point that the ALJ's error in failing to account for plaintiff's fibromyalgia as a severe impairment requires the ALJ to reconsider his adverse credibility determination. As discussed above, there are no objective tests to confirm the existence of fibromyalgia. Accordingly, an ALJ cannot rely on the lack of objective medical evidence to undermine a plaintiff's claims of severity. Because this matter is being remanded in light of the step two failure to include fibromyalgia, the ALJ is also directed to reassess the plaintiff's credibility.

> E.  <u>The ALJ Did Not Ignore the Medical Evidence of Four Doctors, But Must Reassess the Medical Evidence of Three Doctors in Light of the Fibromyalgia Impairment.</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a nontreating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751. "Likewise, greater weight is accorded to the opinion of an examining physician than a

---

[5] As pointed out by the Commissioner, the latter date should be January 2004. AR at 300-394.

REPORT AND RECOMMENDATION
PAGE -13

non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).

However, under certain circumstances, an examining physician's opinion can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If the Commissioner rejects the opinion of a treating or examining physician, the Commissioner must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Relevant medical evaluations of the following physicians were before the Commissioner at the time of his decision: Dr. Yuen, Dr. Eggertsen, Dr. Schur, Timothy Anderson, D.O., Theodore Becker, Ph.D., Robert Bernardez-Fu, M.D., an Robert Hoskins, M.D. In a very cursory fashion (approximately one page of a twenty-six page brief), the plaintiff asserts that the ALJ "ignored" the opinions of the first four doctors. Dkt. No. 11 at 24.

The ALJ did not ignore the medical evidence offered by the four doctors. Instead, he referenced each of the doctors opinions. The plaintiff claims that Dr. Anderson determined she was significantly impaired because there is a "4" in a circle. AR at 176. However, on the same document, there is a "3" indication in the severity rating box, which reflects only a moderate impairment. In addition, there is a handwritten note that states "cannot accept LBP [Lower Back Pain] or 'pain' diagnosis." On the next page, Dr. Anderson indicated that "Light duty" would be the highest exertional level for the plaintiff. The ALJ's RFC restricts the plaintiff to "light duty" in terms of exertional levels. AR at 18.

As discussed above, the ALJ erred when he failed to consider the fibromyalgia as a severe impairment. This may mean that he failed to give proper weight to the medical opinions

REPORT AND RECOMMENDATION
PAGE -14

of Drs. Yuen, Eggertsen and Schur.  All three physicians discussed the plaintiff's fatigue problems.  The ALJ is directed to reconsider the opinions of Drs. Yuen, Eggertsen and Schur in light of this error.

  F. <u>The ALJ Did Not Err in his Treatment of Testimony Offered by a Vocational Counselor and a Mental Health Clinician But Should Consider Both on Remand if They Meet Basic Evidentiary Standards.</u>

  Finally, the plaintiff argues that the ALJ erred by failing to consider a written statement from a vocational counselor John Fountaine (AR at 155-57), and a late-filed opinion from an unidentified person at the community psychiatric clinic.  AR 435.  The meaning of either is not clear from the face of the documents.  The failure to specifically address either exhibit would not, by itself, justify remanding this case.  There are too many ambiguities and questions regarding both of them to make this a serious assignment of error.  However, because this matter is being remanded for further proceedings in light of the lack of a fibromyalgia finding, the ALJ should also consider these two exhibits, assuming they have evidentiary foundation and value, and assess what impact, if any, they would have on the plaintiff's RFC.

## VIII.  CONCLUSION

  For the foregoing reasons, the Court recommends that this case be case be REVERSED and REMANDED for further proceedings, not inconsistent with this opinion.  A proposed order accompanies this Report and Recommendation.

  DATED this 4th day of December, 2007.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge